UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL KNOX, | ) | CASE NO. 4:25-cv-105 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| CORECIVIC INC., et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Plaintiff Jamal Knox ("Knox") alleges that he was attacked and stabbed by other inmates while incarcerated at the Northeast Ohio Correctional Center ("NEOCC"). (*See* Doc. No. 1-1 (Complaint).) In this lawsuit, Knox asserts various state-law tort claims against Warden Douglas Fender ("Fender"), Dr. Bodjanac ("Bodjanac"), Officer George ("George"), Officer Yancy ("Yancy"), Medical Supervisor Hightower ("Hightower"), Unit Manager Sabo ("Sabo"), and certain unidentified Does, as well as the operator of NEOCC, CoreCivic, Inc. ("CoreCivic"). (*Id.* at 2.) Defendants move to dismiss for failure to state a claim. (Doc. No. 6 (Motion to Dismiss).) Knox opposes the motion. (Doc. No. 9 (Response).) Defendants replied. (Doc. No. 10 (Reply).) For the reasons below, defendants' motion is **GRANTED in part and DENIED in part**.

I.      **BACKGROUND**[1]

During his time as an inmate at NEOCC, Knox was designated as low custody. (Doc. No. 1-1 ¶¶ 2–4.) A low-custody designation indicates that an inmate is not "a danger to other people

---
[1] At this stage, the Court accepts Knox's well-pleaded factual allegations as true.

in the facility" or "at risk of danger from other people in the facility, particularly other inmates." (*Id.* ¶ 4.) Low-custody inmates are housed on the "A-Side" of NEOCC, "separate and apart" from high-custody inmates. (*Id.* ¶ 5.) In addition to the separation between the A-Side and B-Side, B-Side inmates are further divided, with "the more dangerous" inmates living in Unit B4 and the "more vulnerable" housed in Unit B2. (*Id.* ¶¶ 8–9.) CoreCivic's "safety rules require that the door" between Unit B4 and Unit B2 "is always secured to ensure the safety of inmates in Unit B2 by maintaining constant physical separation between the two sub-sets of B-side inmates." (*Id.* ¶ 10.)

Despite his low-custody classification, Knox claims that Fender "confronted" him and "threatened . . . 'to send [Knox] down to where motherf****** are bad.'" (*Id.* ¶ 6.) Shortly after that encounter, Knox "was sent, in violation of [CoreCivic's] safety rules, to the 'B-Side' of the facility" and "assigned to Unit B2." (*Id.* ¶¶ 7, 11.)

While living in Unit B-2, Knox claims that he was "attacked by Unit B4 inmates" after George "opened and/or failed to secure" the door between the two units. (*Id.* ¶¶ 12–13.) During the attack, several unidentified Does watched from behind a "crash gate[.]" (*Id.* ¶ 14.) Despite his pleas for help, none of the Does "attempted to intervene against the attack or open the gate to allow [Knox] to escape." (*Id.*) Ultimately, Knox was stabbed eleven times before the Does "opened the gate allowing [Knox] to escape his attack." (*Id.* ¶ 15.)

Even though he was "bleeding from his eleven stab wounds" and "in obvious need of immediate medical attention," no ambulance was called. (*Id.* ¶ 16.) Instead, Knox was "forced" to walk to the NEOCC infirmary. (*Id.*) There, he was examined by Bodjanac, under Hightower's supervision. (*Id.* ¶ 17.) During that visit, Knox "continuously asked to be taken to the hospital[.]" (*Id.* ¶ 18.) Citing Knox's ability to speak and a lack of available cars, Bodjanac refused to allow Knox to be transported. (*Id.*) Knox repeated his request for an ambulance, and again, Bodjanac

2

and Hightower refused. (*Id.* ¶ 19.) Instead, Knox was sent back to a cell, where he remained for six days. (*Id.* ¶ 20.) Knox requested medical attention several times because he "struggled to breathe, constantly bled all over the cell, and was largely unable to move without excruciating pain." (*Id.* ¶ 21.) Each of his requests was ignored or refused. (*Id.* ¶ 22.) Eventually, a non-defendant nurse intervened, and Knox was taken to a local hospital. (*Id.* ¶¶ 23–25.) Knox remained in the hospital for three days, where he "underwent painful and invasive medical treatment[.]" (*Id.* ¶ 27.)

When he returned to NEOCC, Knox's condition remained dire. He "was unable to walk, had highly impaired vision, severe dizziness, auditory hallucinations, and nausea." (*Id.* ¶ 28.) "Despite being unable to walk," he was placed back into a cell, denied use of a wheelchair, and deprived of his prescribed medications for dizziness. (*Id.* ¶¶ 28–29.) Eventually, Knox fell, hit his head, and suffered a seizure after trying to use the toilet without a wheelchair. (*Id.* ¶ 29.) As a result of that fall, Knox spent several days at a local hospital and rehabilitation facility. (*Id.* ¶ 30.)

When Knox was again transferred back to NEOCC, he was placed in solitary confinement for fifteen days. (*Id.* ¶ 31.) During that time Knox "was denied showers or assistance to the toilet, to the point that the skin on his feet began to peel off and he developed sores and rashes" on his genitals. (*Id.* ¶ 32.)

After "trying to hold his bowels" for around a week, the "discomfort became intolerable[,]" so Knox tried to get to the toilet without assistance. (*Id.*) "He fell again." (*Id.* ¶ 33.) Rather than helping him to the toilet, Bodjanac, Yancy, and other unidentified Does picked Knox up "and violently threw him back on the bed[.]" (*Id.* ¶ 34.) Bodjanac and another corrections officer then "laughed in [his] face instead of helping him." (*Id.*) Soon after, Knox was transferred to a different facility. (*Id.* ¶ 31.)

3

Knox sued defendants in state court, asserting negligence, negligence per se, medical malpractice, and battery claims. (*Id.* ¶¶ 35–106.) After removing the case on the basis of diversity and federal officer removal jurisdiction (Doc. No. 1 (Notice of Removal), at 6 (citing 28 U.S.C. §§ 1441(b) and 1442(a)(1))), defendants moved to dismiss for failure to state a claim. (Doc. No. 6.) Knox opposes the motion (Doc. No. 9), and defendants filed a reply. (Doc. No. 10.)

## II. STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). While a court must construe a complaint in the light most favorable to the plaintiff and accept the truth of well-pleaded factual allegations, it should "not accept as true any conclusory legal allegations that do not include specific facts necessary to establish the cause of action." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citation and quotation marks omitted). Put simply, "conclusory allegations without specific facts do not suffice." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 817 (6th Cir. 2020); *Twombly*, 550 U.S. at 555 ("[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]").

## III. DISCUSSION

### A. Claims Against Doe Defendants

Defendants argue that any claims against the unnamed Doe defendants should be dismissed because Knox fails to assert "concrete allegations" against them. (Doc. No. 6, at 13–14.) The Court

4

disagrees. Even though "courts generally do not favor use of 'John Doe' to identify defendants, where the [identity] of a party is unknown prior to the filing of a complaint, courts generally allow a plaintiff to identify the unknown defendant through discovery, unless it is clear that discovery would not uncover the identities of the defendants." *Staples v. United States*, No. 16-cv-12367, 2016 WL 3611883, at *3 (E.D. Mich. July 6, 2016) (citations omitted); *Epperson v. City of Humboldt*, 183 F. Supp. 3d 897, 908 (W.D. Tenn. 2016) (similar).

Defendants' cited cases are distinguishable. (Doc. No. 6, at 13–14.) In *Mosholder v. Lowe's Home Centers, LLC*, 444 F. Supp. 3d 823 (N.D. Ohio 2020), this Court dismissed unnamed defendants, but only after the close of discovery. *Id.* at 832 ("The Mosholders have had adequate opportunity to identify the Jane Doe defendants and have failed to do so."). And in *Castellon v. Hinkle*, No. 2:20-cv-6420, 2023 WL 5011304 (S.D. Ohio Aug. 7, 2023), unnamed Does were dismissed because the plaintiff "made no specific allegations against the John/Jane Doe Defendants in his complaint." *Id.* at *2. Here, by contrast, Knox alleges specific actions by the Doe defendants. (*See, e.g.*, Doc. No. 1-1 ¶¶ 14–16, 34.) And, unlike the plaintiffs in *Mosholder*, Knox has not had an adequate opportunity to identify those unnamed defendants through discovery. Accordingly, to the extent that defendants seek dismissal of the Doe defendants, their motion is DENIED.

### B.  Counts 1, 2, 3, 5, and 6: Negligence and Negligence Per Se Claims

In Counts 1, 2, 3, 5, and 6 of his complaint, Knox asserts negligence and negligence per se claims. (*Id.* ¶¶ 35–71, 80–106.) Defendants make several arguments as to why those claims should be dismissed in part. (Doc. No. 6, at 5–11, 13.)

To withstand a motion to dismiss a negligence claim, a plaintiff must plausibly allege "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that

5

the breach of the duty proximately caused the plaintiff's injury." *Chambers v. St. Mary's Sch.*, 697 N.E.2d 198, 200–01 (Ohio 1998) (collecting cases); *Jackson v. Walmart, Inc.*, No. 1:23-cv-1110, 2024 WL 2215952, at *10 (N.D. Ohio May 16, 2024) (citation omitted).

In some cases, the duty and breach elements of a negligence claim can be satisfied if the defendant violated a duty imposed by statute. *Sikora v. Wenzel*, 727 N.E.2d 1277, 1280 (Ohio 2000) (citing *Chambers*, 697 N.E.2d at 201); *Cincinnati Bell Tel. Co., LLC v. J.K. Meurer Corp.*, 185 N.E.3d 632, 638 (Ohio Ct. App. 2022). "But negligence per se does not follow from every violation of a statutory duty[.]" *Horvath v. Ish*, 979 N.E.2d 1246, 1255 (Ohio 2012) (Pfeifer, J., concurring in part and dissenting in part). Sometimes a statutory violation is simply "evidence of negligence." *Sikora*, 727 N.E.2d at 1280.

The "distinction . . . depends upon the degree of specificity with which the particular duty is stated in the statute." *Id.* If "a statute sets forth a positive and definite standard of care whereby a jury may determine whether there has been a violation [of the statute] by finding a single issue of fact, a violation of that statute constitutes negligence per se." *Id.* (cleaned up). But if a statute imposes only a "a general, abstract description of a duty," a violation of that statute can serve only as "evidence" of whether a "defendant failed to act as a reasonably prudent person under like circumstances[.]" *Id.*

In other words, for negligence per se to apply, a statute must supplant the common law standard of care. *Id.* at 1280–01. If a "jury must determine the negligence or lack of negligence of a party charged with the violation of a rule of conduct fixed by legislative enactment from a consideration and evaluation of multiple facts and circumstances by the process of applying, as the standard of care, the conduct of a reasonably prudent person, negligence per se is not involved." *Chambers*, 697 N.E.2d at 201 (cleaned up). Put simply, if "a determination of statutory compliance

6

requires a subjective analysis," negligence per se will not apply. *Boyd v. Moore*, 919 N.E.2d 283, 287 (Ohio Ct. App. 2009) (citation and quotation marks omitted).

    *1.    Negligence per se*

In Counts 2, 3, 5, and 6 of his complaint, Knox alleges that defendants were negligent per se because they violated various statutory duties. (Doc. No. 1-1 ¶¶ 43, 48, 51, 81, 103.) Defendants argue that none of the statutes invoked by Knox impose sufficiently specific duties to satisfy the duty and breach element of Knox's negligence claims. (Doc. No. 6, at 5–10.)[2] Knox contends that his complaint "establish[es] negligence via the 'per se' internal link to duty and breach." (Doc. No. 9, at 8.) He broadly asserts—with no citation to legal authority—that the statutes identified in the complaint "give rise to specific duties." (*Id.* at 9.) Yet his argument pertains only to Count 6, even though defendants also move to dismiss Counts 2, 3, and 5 on similar grounds. (*See id.* at 8–9.) And his analysis "focuses specifically" on Ohio Rev. Code § 2921.44(C)(5) to the exclusion of the other statutes identified in the complaint. (*Id.* at 9.)

The Court agrees with defendants that none of the statutes cited in Knox's complaint impose "a positive and definite standard of care[.]" *Sikora*, 727 N.E.2d at 1280 (cleaned up). At best, they provide "a general, abstract description of a duty[.]" *Id.* Some provide far less.

Consider Ohio Rev. Code § 2921.44 first. § 2921.44(C) proscribes any "officer, having charge of a detention facility" from "negligently" engaging in certain actions. In referencing negligence, the statute does not supplant the common law standard of care—it specifically incorporates it. *See Sikora*, 727 N.E.2d at 1280–01. Because "proof of a violation of [§] 2921.44(C)

---

[2] In their motion, defendants also argue that negligence per se is not a separate cause of action under Ohio law. (Doc. No. 6, at 6.) Knox concedes that point in his opposition. (Doc. No. 9, at 3–4.) Both parties, then, agree that "negligence per se is a legal doctrine that allows the court to find the duty and breach elements of a negligence action established by virtue of the defendant's act or omission in violation of statute." *Grimberg v. Blackbird Baking Co.*, 208 N.E.3d 111, 120 (Ohio Ct. App. 2023) (citation omitted). (*See* Doc. No. 6, at 6; Doc. No. 9, at 3–4, 8.) They dispute only whether that doctrine applies.

requires proof of negligence[,]" negligence per se does not apply. *Frash v. Ohio Dep't of Rehab. & Corr.*, 59 N.E.3d 566, 572 n.1 (Ohio Ct. App. 2016); *Peters v. Ohio Dep't of Rehab. & Corr.*, No. 14-ap-1048, 2015 WL 3964204, at *5 (Ohio Ct. App. June 30, 2015) (recognizing that negligence per se was inapplicable because § 2921.44(C) "on its face requires a determination of negligence to establish dereliction of duty"); *see Woods v. Ohio Dep't of Rehab. & Corr.*, 726 N.E.2d 547, 549 (Ohio Ct. App. 1999) (finding negligence per se inapplicable when "a jury would have to apply general negligence principles in determining whether or not [the relevant statute] was violated"). Much the same with § 2921.44(E), which forbids any "public servant" from "recklessly fail[ing] to perform a duty expressly imposed by law . . . or recklessly do[ing] any act expressly forbidden by law with respect to the public servant's office." Again, that provision requires "a subjective analysis" as to whether a defendant acted recklessly, so negligence per se is inapplicable. *Boyd*, 919 N.E.2d at 287 (citation and quotation marks omitted).

None of the remaining statutes impose a sufficiently specific duty either. (*See* Doc. No. 1-1 ¶¶ 43, 48, 51, 81, 103.)[3] For example, Ohio Rev. Code § 2921.44(H)(1), § 9.08(A)(2)(b), § 9.07(A)(6) are definitional provisions. § 9.07(D)(6) requires local public entities to include a certain provision when contracting for the management of a correctional facility. And § 9.07(G)(1) simply extends criminal liability for wrongs "committed by or with regard to" out of state prisoners housed at correctional facilities operated by private contractors. Far from setting out "a positive and definite standard of care[,]" none of those provisions purport to impose a duty on correctional officers. *Sikora*, 727 N.E.2d at 1280 (cleaned up). Accordingly, none of Knox's cited statutes support a negligence per se theory of liability.

---

[3] The Court analyzes the two provisions of § 9.07 that include a sub-section (6).

*2. Negligence*

Although Knox cannot rely on the cited statutes to establish the existence and breach of a duty, that does not end the inquiry. Indeed, defendants concede that "[a]ny purported [statutory violations], if proven, could *at most* be considered evidence of negligence[.]" (Doc. No. 6, at 9 (emphasis in original).) In Counts 1, 2, 3, 5, and 6, Knox alleges that defendants owed him a duty of care. (Doc. No. 1-1 ¶¶ 36, 43, 48, 51, 81–82, 103.) To be sure, the complaint cites various statutory provisions when alleging the existence of a duty. (*Id.* ¶¶ 43, 48, 51, 81, 103.) But, statutes aside, defendants still owed Knox "a common-law duty of reasonable care and protection from unreasonable risks." *Frash*, 59 N.E.3d at 572 (citation omitted). Any alleged statutory violations, while not dispositive of duty and breach, can serve as evidence of the negligence alleged in Counts 1, 2, 3, 5, and 6. *See, e.g.*, *Chambers*, 697 N.E.2d at 203 (recognizing that a statutory violation can serve "as evidence of negligence[,]" even if negligence per se does not apply).

*3. Count 1: Negligence as it pertains to Sabo*

In Count 1, Knox contends that Sabo violated her "duty and responsibility of care to ensure the safety of the inmates" by "failing to properly supervise" other defendants and remedy violations of "the safety rule requiring B4 separation from B2[.]" (Doc. No. 1-1 ¶¶ 35–40.) Defendants claim that Knox's complaint is "devoid of any specific factual allegations" that establish who Sabo is, how she was involved, what she knew, or how she contributed to the other defendants' conduct. (Doc. No. 6, at 11.)

The parties seem to disagree whether Knox is alleging that Sabo herself was negligent, or that she is liable under a theory of negligent supervision. (*See* Doc. No. 9, at 4–5; Doc. No. 10, at 3–4.) Although the Court questions the propriety of a negligent supervision claim as it pertains to

9

Sabo,[4] both types of claims require similar allegations. *See Phillips v. Regina Health Care*, No. 30883, 2024 WL 5220743, at *7 (Ohio Ct. App. Dec. 26, 2024) ("Negligent retention and supervision are negligence-based torts which require proof of the basic elements of negligence: duty, breach, proximate cause, and damages." (citation and quotation marks omitted)). Knox has failed to plausibly allege a claim against Sabo under either theory. To be sure, Knox has adequately pleaded that Sabo owed a duty to Knox. (Doc. No. 1-1 ¶ 36.) And Knox has alleged that the safety rule requiring the door between Unit B2 and Unit B4 to be secured "was constantly violated" and that Sabo "took no steps to curb this dangerous practice." (*Id.* ¶ 37.) But there are no allegations that Sabo was George's supervisor or responsible for ensuring compliance with the safety rule requiring the door to remain secured at all times. Knox's single description in the introductory paragraph of the complaint of Sabo's status as "Unit Manager" sheds little light on her responsibility over George (or any of the other defendants), or enforcement of the safety rules. (*Id.* at 2.) The description is particularly vague in light of Knox's allegations that there was more than one unit at NEOCC. (*See, e.g.*, *id.* ¶¶ 5, 8–9.) Accordingly, Count 1 is DISMISSED as to Sabo.

Defendants also argue that certain claims against CoreCivic in Count 1 should be dismissed. (Doc. No. 6, at 11.) To the extent that Knox alleges CoreCivic is vicariously liable for Sabo's actions, that claim is DISMISSED. *See, e.g.*, *Strock v. Pressnell*, 527 N.E.2d 1235, 1244 (Ohio 1988) ("It is axiomatic that for the doctrine of *respondeat superior* to apply, an employee

---

[4] If, as it seems, Knox is asserting a negligent supervision claim against Sabo, that claim appears to be directed at the wrong defendant. As defendants point out (Doc. No. 10, at 4), a negligent supervision claim is properly brought against an employer, not an employee's direct supervisor. *See, e.g.*, *Evans v. Akron Gen. Med. Ctr.*, 170 N.E.3d 1, 4–5 (Ohio 2020) ("A negligent hiring, retention, or supervision action is a direct claim against an employer, based on an employee's conduct that the law regards as wrongful that would not have occurred but for the employer's failure to properly hire, supervise, or retain the employee." (citation omitted)). Indeed, one of Knox's cited cases recognizes that distinction. *Lutz v. Chitwood*, 337 B.R. 160, 170 (S.D. Ohio 2005) ("The Trustee has not cited the Court to any cases where an Ohio court has recognized a claim of negligent supervision against an individual employee for the incompetence of a co-employee."). Knox does not allege that Sabo is George's employer, or that she was part of his hiring or retention. Nonetheless, because this argument was raised for the first time in reply and is unnecessary to resolve the issue, the Court will not consider it here.

must be liable for a tort committed in the scope of his employment."). Moreover, Knox has not asserted a negligent supervision claim against CoreCivic, which is distinct from vicarious liability. *Simpkins v. Grace Brethren Church of Delaware*, 16 N.E.3d 687, 703 (Ohio Ct. App. 2014) ("[C]ourts examining causes of action for negligent hiring, retention, supervision, or promotion, analyze them separately from respondeat superior or vicarious liability causes of action[.]"). Knox's complaint alleges only that CoreCivic "is vicariously liable for the tortious actions of its employees[.]" (Doc. No. 1-1 ¶ 41.) Thus, the only claims remaining against CoreCivic in Count 1 concern its alleged vicarious liability for the negligence of George and Does.

### 4. *Count 3: Negligence as it pertains to Yancy*

In Count 3, Knox asserts a negligence claim against several defendants. (*Id.* ¶¶ 47–71.) He concedes, however, "that he has not stated a claim against [Yancy] in the context of Count 3 only." (Doc. No. 9, at 4.) Accordingly, Count 3 is DISMISSED as it pertains to Yancy. *See, e.g.*, *Mun. Servs. of Am. Corp. v. Sak*, No. 1:22-cv-2037, 2023 WL 6958639, at *3 (N.D. Ohio Oct. 20, 2023) (granting motion to dismiss portion of complaint because plaintiff conceded it did not state a claim). Even without Yancy, CoreCivic will remain a party to Count 3, as Knox alleges that it is vicariously liable for the negligence of Hightower, George, Bodjanac, and the Does.

### 5. *Count 6: Negligence as it pertains to Fender*

Defendants first argue that Count 6 should be dismissed because it is styled only as a negligence per se claim. (Doc. No. 6, at 13.) As discussed above, defendants are correct that negligence per se is not a standalone cause of action. *Grimberg*, 208 N.E.3d at 120. But Count 6's substantive allegations are similar to Knox's other negligence claims, which all plead both negligence and negligence per se. (*See* Doc. No. 1-1 ¶¶ 102–06.) And while Knox uses statutory language in alleging the existence of a duty "to observe reasonable regulations for the management

11

of the detention facility" (*id.* ¶ 103 (citing § 2921.44(C)(5))), Ohio law imposes on corrections officers an independent "common-law duty of reasonable care and protection from unreasonable risks." *Frash*, 59 N.E.3d at 572 (citation omitted); *Saunders v. McFaul*, 593 N.E.2d 24, 26 (Ohio Ct. App. 1990) (similar); *Molton v. City of Cleveland*, 839 F.2d 240, 247 (6th Cir. 1988) (applying Ohio law) ("[T]he police have a duty to protect the health and well-being of those in their custody against known or foreseeable dangers. Violation of this duty results in liability for negligence."). Accordingly, even though Knox uses statutory language in formulating his allegations, the Court will construe Count 6 as alleging a negligence claim. *See Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) ("[T]he Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint. Indeed, this court has made clear that the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." (citation and quotation marks omitted)).

Defendants alternatively argue that Count 6 should be dismissed because there are no allegations concerning "Fender's involvement in or knowledge of [Knox's] transfer[,]" or his failure "to observe reasonable regulations for the management of the facility[.]" (Doc. No. 6, at 13 (citation and quotation marks omitted).) Knox, however, alleges that Fender, as the warden of NEOCC, personally threatened to send Knox to the B-side of the facility, and that Knox was actually transferred shortly thereafter. (Doc. No. 1-1 ¶¶ 6–7.) In doing so, Knox plausibly alleges that Fender failed to observe CoreCivic's policy that, "[f]or safety reasons, Low Custody inmates are housed on the 'A-Side' of the facility, separate and apart from the High Custody inmates." (*Id.* ¶ 5.) Therefore, drawing all reasonable inferences in favor of Knox, the complaint plausibly alleges that Fender negligently violated a "common-law duty of reasonable care[.]" *Frash*, 59 N.E.3d at 572. While defendants may ultimately be able to prove the Fender was not involved in Knox's

transfer or that there was a reasonable justification for transferring Knox, the complaint plausibly alleges otherwise.

### C. Count 4: Battery Claim Against Bodjanac, Yancy, and the Does

Aside from his negligence claims, Knox alleges that defendants Bodjanac, Yancy, and the Does battered him when they "violently threw him on [his] bed instead of helping him to the toilet." (Doc. No. 1-1 ¶¶ 72–78.) Defendants argue that Knox has failed to plausibly allege that defendants acted with intent to cause harmful or offensive contact. (Doc. No. 6, at 12–13.)[5] Knox counters that defendants' intent can be "inferred" from the "totality of the circumstances[.]" (Doc. No. 9, at 8.)

Under Ohio law, a "person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results." *Love v. City of Port Clinton*, 524 N.E.2d 166, 167 (Ohio 1988) (citation omitted). Contact is "offensive" if it would offend "a reasonable sense of personal dignity[.]" *Id.* (citation omitted). A defendant's intent to cause offensive or harmful conduct need not be express, but "may be inferred from the nature of the defendant's act or conduct[.]" *Norris v. Richland Corr. Inst.*, No. 2004-07107, 2005 WL 2709164, at *1 (Ohio Ct. Claims Sept. 30, 2005) (citation and quotation marks omitted).[6]

---

[5] Knox's counsel chides defense counsel for advancing "facially laughable[,]" "arguably sanctionable[,]" and "outright frivolous" arguments "in violation of Rule 1, Rule 11, and in contravention to the lawful purpose of Rule 12(b)(6)[.]" (Doc. No. 9, at 7–8.) He further describes defendants' arguments as "preposterous[.]" (*Id.* at 8.) Such rhetoric is rarely appropriate—and it is not appropriate here. Although the Court ultimately concludes that Knox has plausibly alleged a battery claim, defendants' motion to dismiss appears to have been made in good faith and supported by non-frivolous legal arguments. Accordingly, the Court will not accept Knox's invitation to issue a show cause order, and Knox's counsel is cautioned against employing such bluster in future filings with the Court.

[6] The type of intent necessary to sustain a battery claim under Ohio law is an open question. *Gerber v. Veltri*, 702 F. App'x 423, 434–35 (6th Cir. 2017) (collecting cases). Some Ohio courts impose liability if a defendant intended to contact the plaintiff. *Id.* Others require that a defendant act "both with the intent to make physical contact, and with the intent that the contact offend or cause bodily harm to the plaintiff." *Id.* at 435. The parties appear to agree on the second approach. (*See* Doc. No. 6, at 12–13; Doc. No. 9, at 7–8.) As explained, Knox's claim survives under the more stringent approach, and would therefore survive under the more lenient approach as well.

Viewing the complaint in the light most favorable to Knox, he plausibly alleges a battery claim against Bodjanac, Yancy, and the Does. At this stage, defendants do not dispute that the contact was intentional. Rather, they argue that there are "insufficient facts to demonstrate that any [d]efendant acted with an intent to cause harmful or offensive contact to [p]laintiff." (Doc. No. 6, at 12–13.) Viewed in context and in a light most favorable to Knox, Knox alleges facts from which intent to cause offensive contact may be inferred.[7] Knox alleges that he was in an "extremely vulnerable condition" and needed assistance to the toilet. (Doc. No. 1-1 ¶ 76.) Despite his vulnerable state, Knox claims that Bodjanac, Yancy, and the Does failed to help him. (*Id.* ¶ 74.) Instead, they picked him up and "violently threw him on [his] bed[.]" (*Id.*) Given those circumstances, Knox's complaint plausibly alleges a battery.

Neither of defendants' counterarguments move the needle. First, they argue that being pushed onto a soft bed is inherently unoffensive. (Doc. No. 6, at 12.) The Court disagrees. Being violently thrown onto a bed after falling and requesting medical assistance could offend "a reasonable sense of personal dignity[.]" *Love*, 524 N.E.2d at 167. Indeed, courts have found far more benign types of contact potentially offensive at the motion to dismiss stage. *See, e.g.*, *Gerber v. Ohio N. Univ.*, No. 3:14-cv-2763, 2015 WL 1996252, at *10 (N.D. Ohio Apr. 30, 2015) (finding allegation that defendant tightly grabbed and squeezed the plaintiff's shoulder during an argument sufficient to withstand motion to dismiss).

Second, defendants argue that their behavior after throwing Knox (including mocking him and laughing) is not probative of their intent. (Doc. No. 6, at 12.) The Court, however, finds that context relevant. *See, e.g.*, *Norris*, 2005 WL 2709164, at *1 (recognizing that a defendant's intent

---

[7] In their motion to dismiss, defendants seem to suggest that physical harm is a required element of battery under Ohio law. (Doc. No. 6, at 13.) In their reply, however, defendants correctly concede that alleging either physical harm *or* offensive contact is sufficient. (Doc. No. 10, at 6 n.1 (citing *Gerber*, 702 F. App'x at 435).)

14

to cause offensive or harmful conduct "may be inferred from the nature of the defendant's act or conduct" (citation and quotation marks omitted)); *Harris v. United States*, 422 F.3d 322, 330 (6th Cir. 2005) (applying Ohio law and relying on "totality of circumstances" to evaluate whether battery occurred). For example, the Ohio pattern jury instructions provide that, in "determining the intent with which a person did a particular act, [the jury has] to take into consideration his/her conduct before, during, and after the act, any statements made by him/her before, during, and after the act, and the manner in which the act itself was done." 1 Ohio Jury Instructions Civil 429.03. Knox has plausibly alleged a battery claim in Count 4.

### IV. CONCLUSION

For the reasons explained above, defendants' motion to dismiss is **GRANTED in part and DENIED in part**. Count 1 is **DISMISSED** as to Sabo and Count 3 is **DISMISSED** as to Yancy. Additionally, while Counts 1, 2, 3, 5, and 6 survive, Knox may not pursue his negligence claims under a negligence per se theory. By separate order, the Court will set this matter for a case management conference.

**IT IS SO ORDERED**.

Dated: June 2, 2025

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

15