# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JAMAL KNOX,               )      CASE NO. 4:25-cv-105

                                 )

          Plaintiff,         )      CHIEF JUDGE SARA LIOI

                                 )

vs.                        )      **MEMORANDUM OPINION**

                                 )      **AND ORDER**

                                 )

CORECIVIC, INC., *et al.*,      )

                                 )

          Defendants.       )

This is a case in which plaintiff Jamal Knox ("Knox") seeks to recover from CoreCivic, Inc. ("CoreCivic") and certain of its employees (collectively, with CoreCivic, "defendants") for injuries allegedly sustained while serving a sentence of incarceration at a CoreCivic facility. Before the Court are Knox's Motion for Leave to File First Amended Complaint (Doc. No. 64 (Motion for Leave)) and Knox's Amended Motion to Extend Fact Discovery[1] (Doc. No. 77 (Amended Motion to Extend Fact Discovery)). Defendants oppose both motions. (Doc. No. 68 (Opposition to Motion for Leave); Doc. No. 80 (Opposition to Amended Motion to Extend Fact Discovery).) For the reasons stated herein, the Court **DENIES** both motions.

---

[1] Knox had previously filed a motion to extend fact discovery by forty-five days. (Doc. No. 75 (Withdrawn Motion to Extend Fact Discovery).) This motion was later withdrawn upon his filing of the amended motion (Doc. No. 77). (*See* Minutes of Proceedings [non-document], 07/07/2026.)

## I.     BACKGROUND

Knox is an inmate incarcerated at the Northeast Ohio Correctional Center ("NEOCC") in Youngstown, Ohio. (Doc. No. 1-1 (Complaint) ¶ 2.) NEOCC is owned and operated by CoreCivic. (*Id.* ¶ 1.) Knox alleges that on December 18, 2023, CoreCivic employee Officer FNU George failed to secure the door to the unit where Knox was housed. (*Id.* ¶ 12.) Knox was thereafter attacked by other NEOCC inmates. (*Id.* ¶ 13.) Knox represents that he cried for bystander CoreCivic employees to intervene, but none did so. (*Id.* ¶ 14.) Knox alleges that he was stabbed eleven times before CoreCivic employees intervened to allow him to escape. (*Id.* ¶ 15.)

Rather than summon an ambulance to transport him to the hospital, Knox alleges that CoreCivic employees forced him to walk to the infirmary. (*Id.* ¶ 16.) There, CoreCivic employees Dr. FNU Bodjanac and Medical Supervisor FNU Hightower refused to call an ambulance or otherwise have him taken to the hospital. (*Id.* ¶ 19.) Knox claims that he was placed in a detention cell where he "struggled to breathe, constantly bled all over the cell, and was largely unable to move[,]" all the while his efforts to receive medical attention were ignored by CoreCivic employees. (*Id.* ¶ 21–24.)

Knox was eventually transported to St. Elizabeth Hospital in Youngstown, Ohio, where he underwent medical treatment before returning to NEOCC on December 27, 2023. (*Id.* ¶ 25–27.) Back at NEOCC, Knox claims that CoreCivic refused to accommodate his injuries. (*Id.* ¶ 28–29.) On December 29, 2023, Knox had a seizure and was subsequently returned to St. Elizabeth Hospital. (*Id.* ¶ 29–30.)

On January 9, 2024, Knox was transferred to Hillside Rehabilitation Hospital in Warren, Ohio. (*Id.* ¶ 30.) On January 11, 2024, Knox returned to CoreCivic custody where he was placed

in solitary confinement for fifteen days, during which he alleges he was denied access to a shower and toilet, resulting in rashes and sores. (*Id.* ¶ 31–32.) He also alleges that, when he fell down, CoreCivic employees violently threw him back on his bed and laughed at him. (*Id.* ¶ 33–34.)

On December 17, 2024, Knox filed this action against CoreCivic and its employees "Warden Douglas Fender," "Dr. FNU Bodjanac," "Officer FNU George," "FNU Highwater[2]," "Penelope Sabo," "Officer FNU Yancy," and ten unnamed "FNU LNU" John Doe defendants in the Mahoning County Court of Common Pleas. (*Id.* at 2.)[3] The case was removed to federal court on January 21, 2025. (Doc. No. 1 (Notice of Removal).)

On July 8, 2025, the Court held a telephonic case management conference with the parties and issued an order setting case dates and deadlines. (Doc. No. 20 (Case Management Plan and Trial Order); Minutes of Proceedings [non-document], 07/08/2025.) The Court set August 8, 2025, as the deadline for the parties to amend their pleadings. (Doc. No. 20 (Case Management Plan and Trial Order), at 1.) The Court has since amended its Case Management Plan and Trial Order twice (*see* Doc. No. 44 (Amended Case Management Plan and Trial Order); Doc. No. 57 (Second Amended Case Management Plan and Trial Order)) upon motions of the parties. The deadline for the parties to amend their pleadings, however, has remained unchanged, as the parties did not request a modification of this deadline.

On June 9, 2026—the day before Knox was scheduled to be deposed—Knox informed defendants by email of his intent to "correct[] the [c]omplaint" by substituting Assistant Warden

---

[2] Although the case caption refers to a defendant "FNU Highwater," the body of the complaint only mentions a Medical Supervisor Hightower.

[3] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Droydred Blackmon for Warden Douglas Fender. (Doc. No. 68-1 (Email Exchange), at 2.) Knox wrote that "[o]n review, the actions attributed in the [c]omplaint to Warden Fender are more accurately attributable to Warden Blackmon." (*Id.*)

On June 17, 2026—well after the August 8, 2025, deadline for the parties to add parties or amend pleadings and two and a half weeks before the extended deadline for fact discovery (Doc. No. 20, at 1; Doc. No. 57, at 1)—Knox filed a motion to amend his complaint. (Doc. No. 64.) Knox seeks to (i) remove defendants Yancy and Hightower, (ii) substitute Assistant Warden Droydred Blackmon for Warden Douglas Fender, and (iii) edit the complaint to reflect the Court's ruling on Defendant's Motion to Dismiss. (*Id.*)

The deadline for the completion of fact discovery was July 6, 2026. (Doc. No. 57, at 1.) That very day, Knox filed an amended motion to extend fact discovery until September 4, 2026. (Doc. No. 77, at 1.) Knox contends that defendants have engaged in a "consistent pattern of delivering critical discovery at the very last minute," having the effect of "confounding and severely curtailing [Knox's] ability to review, digest, consider, prepare, and/or apply the newly divulged information to the claims and merits of his case." (*Id.*) Knox takes specific issue with defendants' allegedly belated disclosures of: (i) the identity of the NEOCC facility investigator who may have information regarding the existence of accessible security camera footage of the incident giving rise to Knox's injuries; and (ii) Knox's NEOCC Inmate Condensed Chart Report ("ICCR") which purportedly includes "undisclosed clinical data and information." (*Id.* at 2.) For these reasons, Knox argues that the Court should extend fact discovery by sixty days, until September 4, 2026, so that he can conduct additional discovery and depositions based on these disclosures. (*See id.* at 3.)

## II.    LEGAL STANDARD

Once the time for a party to amend as a matter of course under Rule 15(a)(1) expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Pursuant to Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." *Id.* However, "[a] motion for leave to amend the complaint may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014) (citations omitted).

When, as here, the deadline for amending pleadings established by the court's scheduling order has passed, "a plaintiff first must show good cause under Rule 16(b) [of the Federal Rules of Civil Procedure] for failure earlier to seek leave to amend" and the court "must evaluate prejudice to the nonmoving party 'before a court will [even] consider whether amendment is proper under Rule 15(a).'" *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009) (quoting *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (alterations in original)). "Consequently, the Court is permitted to examine the standard factors governing amendments of the complaints under Rule 15(a) only if it is satisfied that the date for the filing of a motion for leave to amend is properly extended under the good cause provisions of Rule 16(b)." *Craig-Wood v. Time Warner N.Y. Cable LLC*, No. 2:10-cv-906, 2011 WL 4829687, at *2 (S.D. Ohio Oct. 6, 2011). "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Pittman ex rel. Sykes v.*

*Franklin*, 282 F. App'x 418, 425 (6th Cir. 2008) (quotation marks and citation omitted). Motions to extend case deadlines are also subject to Rule 16(b)'s good cause standard. *Amlotte v. O'Hare*, No. 2:08-cv-1158, 2010 WL 795358, at *1 (S.D. Ohio Mar. 2, 2010).

To demonstrate good cause under Rule 16(b), a party must show that they acted with due diligence and that the opposing party will not suffer prejudice by the modification of the scheduling order. *See Leary*, 349 F.3d at 909 (citation omitted); *see Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (noting that "[t]he primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . Another relevant consideration is possible prejudice to the party opposing the modification") (quotation marks and citations omitted)).

## III.    DISCUSSION

Both of Knox's motions are governed by Rule 16(b)'s good cause standard. *See Amlotte*, 2010 WL 795358, at *1. Knox fails to demonstrate good cause for either of his requests. Accordingly, the Court denies both of Knox's motions.

### a.  Motion For Leave to Amend

Knox does not show due diligence in seeking the amendment of his complaint. Knox states that "[i]n preparation for [his own] deposition, it was discovered that the individual named as Warden was misstated in Knox's initial complaint [] as Douglas Fender where it should have been Assistant Warden Droydred Blackmon." (Doc. No. 64, at 1 (record citation omitted).) But Knox's motion does not make it apparent when he learned of this mistake, nor if he moved for amendment soon after the discovery of this error.

The record instead indicates that Knox knew that Assistant Warden Droydred Blackmon was the proper defendant since the inception of this case. When Knox was asked at his deposition about his allegations as they related to Warden Fender, Knox replied, "I don't know who Warden Fender is." (Doc. No. 68-2 (Knox Dep. Excerpt), at 4–5.) Instead, Knox averred that he had "been saying . . . from the very beginning" that the allegations in the complaint were intended to be directed to Assistant Warden Droydred Blackmon, not Warden Fender. (*Id.* at 5.) If so, then Knox should have immediately taken corrective action. Knox fails to explain why he has waited until now—approximately eighteen months after the filing of his original complaint and ten months after the deadline for the parties to amend their pleadings—to amend his complaint. Knox had ample time to amend his complaint to ensure that the proper defendants were named in this case. His untimely effort to do so this late in the proceedings, with no purported justification, is not well-taken. *See Edington on First, LLC v. W. Bend Mut. Ins. Co.*, No. 2:23-cv-3781, 2025 WL 2860061, at \*2 (S.D. Ohio Oct. 9, 2025) (denying plaintiff's motion for leave to amend its complaint because plaintiff "fails to provide any argument that it was diligent in its efforts to timely file its proposed amendment or that it could not reasonably meet the deadline."), *aff'd,* No. 2:23-cv-3781, 2026 WL 1593341 (S.D. Ohio June 4, 2026).

Neither has Knox shown that defendants will not suffer prejudice by the amendment. Knox's motion makes no argument on this point. In contrast, the defendants argue that substituting Assistant Warden Droydred Blackmon for Warden Douglas Fender would cause them substantial prejudice. Specifically, defendants claim that until June 9, 2026, Knox made no indication to defendants that Assistant Warden Droydred Blackmon was the proper defendant. (*See* Doc. No. 68-1, at 2.) Further, Assistant Warden Droydred Blackmon was not mentioned in Knox's Rule 26

initial disclosures. (*See generally* Doc. No. 68-3 (Knox's Rule 26 Initial Disclosures); Doc. No. 68-4 (Knox's First Amended Rule 26 Initial Disclosures).) Defendants also represent that "there [was] no mention of [Assistant Warden Droydred] Blackmon at all in any discovery response or supplemental discovery response to date." (Doc. No. 68, at 5–6.) Accordingly, defendants—"for over a year and a half"—developed the record and their legal strategy assuming that Warden Douglas Fender was the appropriate party. (*Id.* at 9.) Defendants have "consulted expert witnesses regarding the claims and allegations made against Defendant Fender" and have "interviewed potential fact witnesses for the purpose of discussing Defendant Fender and his purported involvement in [Knox's] allegations." (*Id.* at 9–10.)

Now, at the tail end of (extended) discovery, Knox seeks to assert claims against an entirely new party that he knew about since the beginning of the case. He filed his motion for leave to amend his complaint a mere *five days* before the expert disclosure deadline and *less than three weeks* before the close of fact discovery. (*See* Doc. No. 57, at 1–2.) Knox's dilatory effort to amend his complaint left the defendants with practically no time to develop the factual record as to the newly asserted claims against Assistant Warden Droydred Blackmon.

During the briefings of these motions, discovery has since closed. To permit Knox's proposed substitution this late in proceedings would require reopening fact discovery to give defendants a fair opportunity to develop the record as to the newly asserted claims against Assistant Warden Droydred Blackmon. This would be prejudicial. *See Leary*, 349 F.3d at 892 ("Defendant would suffer prejudice by allowing this amendment which would require the reopening of discovery at this late stage of the proceedings.").

Knox fails to establish good cause under Rule 16(b). Accordingly, the Court need not—and indeed cannot—consider his proposed amendment under Rule 15.

### b. Motion to Extend Fact Discovery

Knox likewise fails to demonstrate diligence in attempting to meet the Court's scheduling order in his request to extend fact discovery. The Court originally set March 6, 2026, as the deadline for completing fact discovery. (Doc. No. 20, at 1.) Upon motions of the parties, the Court extended the deadline for fact discovery twice. (*See* Doc. No. 44, at 1; Doc. No. 57, at 1.) The current deadline for fact discovery is July 6, 2026. (Doc. No. 57, at 1.) Knox thus had ample time to complete fact discovery. Rather than schedule his desired depositions well in advance of the fact discovery deadline, Knox instead waited until June 17—"a mere 12 business days prior to the close of fact discovery[]"—to notice his intent to depose seven individuals. (Doc. No. 80, at 2, 13.) As a result, Knox was unable to depose all seven individuals due to scheduling conflicts. (*Id.* at 2.)

Knox's decision to wait until June 17, 2026, to convey his intent to depose seven individuals in no way can reasonably be construed as an exercise of due diligence.[4] His last-minute noticing of the depositions left him with no margin for normal delays and foreseeable disputes intrinsic to litigation. *See KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1136 (C.D. Cal. 2018) (observing that litigants "ha[ve] no basis to expect all . . . depositions . . . to be completed—with no last minute disputes—in a matter of days"). Knox's inability to schedule all of his desired

---

[4] During a telephonic status conference held with the Court on July 7, 2026, Knox represented he had planned to wait until written discovery had concluded before noticing the depositions. Defendants contend that this explanation is misleading because "most of the parties' written discovery concluded months ago." (Doc. No. 80, at 8.) In any event, Knox's justification for his last-minute noticing of the depositions is unavailing.

depositions, including his requested deposition of the NEOCC facility investigator,[5] is a "a synthetic crisis of [his] own making[.]" *See Livenson v. Rockwell Collins, Inc.*, No. 2:20-cv-9578, 2021 WL 4497501, at *2 (C.D. Cal. May 29, 2021); *see also Malone v. City of Akron, Ohio*, No. 5:23-cv-2273, 2024 WL 4198916, at *3 (N.D. Ohio Sept. 16, 2024) ("Carelessness or attorney error is insufficient to constitute good cause under Rule 16(b)."). At bottom, Knox had several months to schedule his desired depositions in advance of the July 6, 2026, fact discovery deadline. By waiting until June 17, 2026, to notify defendants of his intent to conduct seven depositions, he bore a risk that the requested depositions may not have been feasibly completed by the July 6, 2026, deadline. He cannot now blame defendants for his own failure to exercise diligence.

The Court also concludes that a re-deposition of Dr. Bodjanac is unnecessary. Knox argues that he should be entitled to conduct a supplemental deposition of Dr. Bodjanac because, at the time Dr. Bodjanac was deposed, Knox was not in receipt of the ICCR and therefore did not have the complete medical record. (*See* Doc. No. 77, at 2–3.) But defendants had disclosed Knox's electronic health records on July 1, 2025. (Doc. No. 80, at 9.) True, the ICCR was erroneously not included in defendants' disclosure of Knox's electronic health records. (*See id.*) But the ICCR "is ancillary and/or complementary to the [electronic health records]" because the ICCR merely condenses the previously disclosed electronic health records. (*Id.* at 9–10.) In other words, defendants represent that the ICCR contains no materially new information. (*See id.* at 11.) What

---

[5] Knox claims that he was "unable to explore the spoliation of surveillance video footage that would best tell the story of what occurred[.]" (Doc. No. 77, at 3.) But the ultimate reason for Knox's inability to depose the NEOCC facility investigator is that he waited until July 1, 2026, to depose Officer Michele Mooney. (*Id.* at 2 n.2.) Knox now wants to conduct a follow-up deposition of the NEOCC facility investigator due to information learned during this deposition. But this whole situation could have been avoided had Knox not scheduled his deposition of Officer Michele Mooney at the last minute.

little new information[6] is included in the ICCR is not material enough to warrant the re-opening of fact discovery. Knox fails to identify any specific information contained in the ICCR that would necessitate a re-deposition of Dr. Bodjanac.

Permitting Knox to re-depose Dr. Bodjanac would also be prejudicial to defendants. Knox had his opportunity to depose Dr. Bodjanac. To use the ICCR as a pretext to re-depose Dr. Bodjanac would be to essentially permit Knox to have another bite at the apple after the close of fact discovery and cause defendants to incur further legal fees and expenses.

Knox fails to establish good cause under Rule 16(b) for his request to extend fact discovery. Accordingly, the Court declines to depart from the July 6, 2026, fact discovery deadline set forth in the Court's most recent Case Management Plan and Trial Order.

## IV.    CONCLUSION

Knox has failed to establish good cause as to either of his motions. For the foregoing reasons, Knox's Motion for Leave to File First Amended Complaint (Doc. No. 64) is **DENIED**, and Knox's Amended Motion to Extend Fact Discovery (Doc. No. 77) is **DENIED**.

**IT IS SO ORDERED**.

Dated: July 30, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[6] Defendants note that the ICCR contains additional information regarding "the authorizing provider for a specific medication, the date and time the medication was administered, the disposition of the administration, who administered the medication, whether the medication is keep on person [], and the effective date of the medication[]" that "was not included in the originally produced [electronic health records]." (*Id.* at 10.) But defendants indicate that the electronic health records still contained general information regarding Knox's medication. (*Id.*) Defendants also represent that "not once during Dr. Bodjanac's deposition did [Knox's] counsel ask him about the administration of medication." (*Id.* at 11.)