**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JAMAL KNOX, | ) | CASE NO. 4:25-cv-105 |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| vs. | ) | **MEMORANDUM OPINION AND ORDER** |
| CORECIVIC, INC., *et al.*, | ) | |
| Defendants. | ) | |

Before this Court is a motion filed by plaintiff Jamal Knox ("Knox") seeking to file and rely on an addendum (the "Addendum") to the original report prepared by his expert, Dr. Emil A. Dameff ("Dr. Dameff"). (Doc. No. 109 (Motion); Doc. No. 100-2 (Addendum).) Defendants CoreCivic, Inc. ("CoreCivic"), FNU Bodjanac ("Dr. Bodjanac"), Douglas Fender, and FNU George (collectively, "defendants") filed an opposition. (Doc. No. 111.) At the Court's direction, Knox filed additional clarification on the content of the Addendum (Doc. No. 116), as well as Dr. Dameff's original report under seal. (Doc. No. 115.) Defendants filed a response to Knox's supplemental submissions. (Doc. No. 119.) For the reasons stated below, Knox's motion to file and rely on the Addendum is **DENIED**.

## I. PROCEDURAL HISTORY

On December 17, 2024, Knox brought this action in state court against defendants for injuries he allegedly sustained while incarcerated at the Northeast Ohio Correctional Center

("NEOCC"), a facility owned and operated by CoreCivic. (Doc. No. 1-1 (Complaint), at 3, 6–14.)[1] Defendants removed the case to federal court on January 21, 2025. (Doc. No. 1 (Notice of Removal).) The Court granted in part and denied in part defendants' motion to dismiss. (Doc. No. 13 (Memorandum Opinion and Order).)

On July 8, 2025, the Court held a telephonic case management conference with counsel and issued an order setting case dates and deadlines. (Doc. No. 20 (Case Management Plan and Trial Order ("CMPTO")); Minutes of Proceedings [non-document], 07/08/2025.) The Court has since amended its CMPTO twice (*see* Doc. No. 44 (Amended CMPTO); Doc. No. 57 (Second Amended CMPTO)) upon motions of the parties. As relevant here, defendants disclosed 259 pages of Knox's electronic medical records on July 1, 2025. (Doc. No. 111, at 2 (citing Doc. No. 18; Doc. No. 80, at 9).) Knox also timely identified Dr. Dameff as an expert and disclosed his report on June 22, 2026. (Doc. No. 109, at 1.)

The deadline for the completion of fact discovery was July 6, 2026. (Doc. No. 57, at 1.) That day, defendants disclosed to Knox his NEOCC Inmate Condensed Chart Report ("ICCR"). (Doc. No. 109, at 1–2.) As defendants contend and Knox does not dispute, the ICCR is an "export of [Knox's] previously produced medical records in a condensed format[.]" (Doc. No. 111, at 2.) The "only difference" between the initial set of records disclosed and the ICCR is the Medication Administration Record ("MAR"), which contains more information on the administration of Knox's medications.[2] After receiving the ICCR, Knox filed a motion to extend fact discovery.

[1] All page number references to the record herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

[2] Although the originally produced records listed Knox's medications, defendants contend that the MAR listed "the authorizing provider for a specific medication, the date and time the medication was administered, the disposition of the administration, who administered the medication, whether the medication is keep on person ("KOP"), and the effective date of the medication." (Doc. No. 111, at 2 n.1.)

(Doc. No. 77.) The Court denied this motion, finding that "[w]hat little new information is included in the ICCR [was] not material enough to warrant the re-opening of fact discovery" and that Knox "fail[ed] to identify any specific information contained in the ICCR that would necessitate a re-deposition of Dr. Bodjanac." (Doc. No. 86 (Memorandum Opinion and Order), at 10.) The Court highlighted defendants' representation that "not once during Dr. Bodjanac's deposition did [Knox's] counsel ask him about the administration of medication." (*Id.* at 11 n.6 (quoting Doc. No. 80, at 11).)

Nevertheless, because Knox received the ICCR after Dr. Dameff had authored his expert report, the Court gave Knox the opportunity for Dr. Dameff to revise that report by written request. On July 7, 2026, the Court held a telephonic status conference with the counsel. The minutes of those proceedings provided:

> Knox shall inform the Court *by written request* should his expert need to revise his report or should Knox need to conduct a supplemental deposition due to defendants' disclosure of certain medical documents at the close of fact discovery and after the relevant witness had been deposed.

(Minutes of Proceedings [non-document], 07/07/2026 (emphasis added).) Over a month passed without Knox submitting any request, as did the deadline for disclosing any rebuttal experts and rebuttal reports.

On August 19, 2026, the last day of expert discovery, Knox disclosed to defendants the Addendum. (*See* Doc. No. 100-2.) The report was 17 pages long, single-spaced, and dated July 7, 2026, a day after defendants had disclosed the ICCR. (*Id.* at 1.) Defendants filed a Notice of Request for a Telephone Conference under Local Rule 37.1, arguing that the report was untimely and contained duplicative or impermissible new, rebuttal, or expanded opinions. (Doc. No. 111, at 6.) During a telephonic status conference with Magistrate Judge Amanda M. Knapp on September

4, 2026, Knox agreed to withdraw the Addendum. Magistrate Judge Knapp instructed Knox that he could file a written request to file an addendum to his expert report, as contemplated by the Court's July 7, 2026 order, by close of business on September 4, 2026. (Doc. No. 106 (Minutes of Proceeding and Order), at 3.) Knox filed that request. (Doc. No. 109.) Defendants filed an opposition. (Doc. No. 111.)

On September 11, 2026, the Court held a status conference to discuss Knox's motion. (Minutes of Proceedings [non-document], 09/11/2026.) During the conference, the Court "indicated that Plaintiff's counsel did not, and still ha[d] not, followed the Court's directive to first identify the information in the ICCR that was not contained in the medical records provided to Plaintiff prior July 6, 2026, when the ICCR was provided, and whether based upon any new information, a supplemental report from Plaintiff's expert would be needed." (*Id.*)[3]

The Court directed Knox to:

> provide a chart . . . explaining (i) what new information was contained in the ICCR that was not contained in records or other discovery provided before July 6, 2026 ("New Information"); (ii) what portion(s) of the supplemental report are based upon the New Information; and (iii) whether any portion of the supplemental report contained new opinions not based upon the New Information.

(*Id.*) Knox filed a report from Dr. Dameff in response to those instructions. (Doc. No. 116.) Defendants responded. (Doc. No. 119.)

[3] Knox's counsel explained in an email that, although Dr. Dameff had drafted the report on July 7, 2026, Knox had not disclosed it sooner because "Dr. Dameff was hoping to be provided with a copy of Dr. Bodjanac's deposition transcript for review prior to finalizing his supplemental addendum." (Doc. No. 100-1, at 3; *see* Minutes of Proceedings [non-document], 09/11/2026.) Defendants maintain that Knox never requested Dr. Bodjanac's errata sheet and that, even if he did, Dr. Bodjanac's deposition transcript could have been provided without it. (Doc. No. 100, at 8.)

## II. LAW AND DISCUSSION

"[D]istricts courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47, 136 S. Ct. 1885, 195 L. Ed. 2d 161 (2016) (collecting cases). Scheduling orders specifically "serve an important case management function, and their terms are binding, unless changed." *Constr. Enters., Inc. v. Waterstone at Panama City Apartments, LLC*, No. 3:10-cv-711, 2011 WL 4431824, at *6 (M.D. Tenn. Sept. 22, 2011). They "are not mere formalities that can be disregarded or treated cavalierly." *Id.* (quoting *United States v. Parker*, 165 F. Supp. 2d 431, 439 (W.D.N.Y. 2001)). District courts enjoy wide latitude in "manag[ing] the discovery process and control[ling] their dockets." *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992)). That includes the discretion "to exclude untimely disclosed expert-witness testimony." *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

Here, the Court issued a straightforward scheduling order. Because defendants provided the ICCR after Knox's expert submitted his report, the Court gave Knox the opportunity to file a "written request" if his expert "need[ed] to revise his report[.]" (Minutes of Proceedings [non-document], 07/07/2026.) Although, as Knox points out, the Court did not set an explicit deadline to file this written request, Knox should have known that he needed to file it before August 19, 2026, the deadline for the completion of expert discovery. More than that, Knox needed to file that request reasonably in advance of that deadline, so that the Court could rule on the request and the parties could conduct any additional necessary discovery. *See Bailey v. Komatsu Forklift U.S.A., Inc.*, 07–cv-2002, 2008 WL 2674886, at *3 (N.D. Iowa July 7, 2008) (discovery requests must be filed "sufficiently in advance" of a discovery deadline to allow time for responses). Alternatively, Knox could have sought a motion to extend expert discovery with a showing of good cause.

But Knox did not file a written request or motion to extend. Instead, he disclosed the Addendum to defendants on August 19, 2026, the very last day of expert discovery, without filing any request with the Court. He then withdrew that report and submitted a written request, but over two weeks had passed since the deadline for completion of expert discovery. To now allow Knox to file this report would effectively amend the Court's case management schedule under Fed. R. Civ. P. 16(b)(4). But an extension under Rule 16(b)(4) requires the movant to demonstrate "good cause." *See Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002). And the "primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Id.* (citations omitted). Here, Knox's expert had drafted the Addendum by July 7, the day after receiving the ICCR, but over a month went by without Knox disclosing the Addendum or requesting any type of extension. And even when Knox did disclose the report, he violated the Court's order by not filing a written request first.

Furthermore, Knox has ignored the Court's instructions on what this written request needed to include. After finding that his initial written request was inadequate, the Court directed to Knox to provide a "chart" explaining (i) what new information was contained in the ICCR, (ii) what portions of the Addendum were based on this new information, and (iii) whether any portion of the Addendum had new opinions not based on the new information. (Minutes of Proceedings [non-document], 09/11/2026.) In response, Knox submitted a convoluted and confusing 17-page report by Dr. Dameff containing six pages of argument the Court did not request (Doc. No. 116-1, at 1–6), a chart missing the full set of information the Court directed him to provide (*id.* at 7–13), and two pages apparently providing that requested information but outside any chart or easily-digestible format (*id.* at 14–17). That is not a good faith effort to follow the Court's instructions. Instead, it is an obvious attempt to evade those instructions and obfuscate the core issue—whether

the Addendum was actually necessary based on new information in the ICCR. For that reason and those stated above, the Court finds no good cause to effectively re-open expert discovery and allow him to file the Addendum.

Even setting that aside, Knox has failed to show why he needs this Addendum in light of any new information in the ICCR. As discussed below, the Addendum merely states opinions Dr. Dameff could have expressed earlier without the ICCR, points out information that has no apparent effect on Dr. Dameff's ultimate conclusions, and vaguely bolsters opinions Dr. Dameff already expressed in his original report.

In the last pages of his supplemental report, Dr. Dameff identifies the new information in the ICCR as follows:

> the additional MAR definitions, the specified late-December IC ["Inmate Not in Cell"] and NS ["No Show"] entries, and the certain levetiracetam administrations at CC-KNOX005826. I also identify the December 18–23 medication entries and the January 23 ibuprofen event in rows 6–7. I treat the December 27 header as an additional displayed field[.]

(Doc. No. 116-1, at 14.) Although somewhat difficult to decipher, this passage seems to reference records addressing why Knox's medication was not administered on certain occasions. Defendants do not dispute that this type of information was not part of the originally produced set of records, apart from the fact that Knox had been prescribed Keppra. (Doc. No. 119, at 5, 5 n.2.) Dr. Dameff then identifies several passages based on this "New Information" (Doc. No. 116-1, at 14–15), which the Court addresses in turn.

First, Dr. Dameff identifies "Section X's MAR-coding paragraph and the next three paragraphs[,]" as responding to new information in the ICCR. (*Id.* at 14) The header for Section X of the Addendum reads "December 24-29 Keppra Nonreceipt and Dr. Bodjanac's December 29

Documentation[.]" (Doc. No. 100-2, at 7.) Under that heading in relevant part, Dr. Dameff opines that the MAR coding entries "sharpen[ ]" the point that Knox's movement from facility to facility "heightened" concern about his continuity of care; that the MAR "distinguishes nonreceipt from refusal;" that "it is medically inaccurate to collapse IC/NS entries into documented refusal without additional native-source support[;]" that "[i]f Defendants contend that the December 24 and [ ] 27 nonreceipt was caused by refusal, the record support for that contention must come" from other sources; and that the nonrefusal codes during this period are "directly material to the December 29 seizure/subtherapeutic-anticonvulsant analysis and to the correctional-healthcare obligation to maintain continuity of essential seizure medication after hospitalization." (*Id.* ¶¶ 51–54.) The rows labeled "Keppra nonreceipt documented without refusal-code support" and "MAR coding distinction between non receipt and refusal" in the Addendum's Section XIV table contain similar opinions. (Doc. No. 100-2, at 14–15.)

In overly complicated terms, Dr. Dameff seems to be expressing a simple idea that he must have known before receiving the ICCR—that defendants could not assume Knox *refused* to take Keppra just because he did not receive it. Surely that basic concept was available to Dr. Dameff when he drafted his original report. In fact, his original report addressed this very issue, explaining that the record did not "establish a single mechanism of refusal or nonadministration," that the "full December 24 through December 29 MAR / refusal / administration chain [was] not fully produced[,]" and "[d]ifferent parts of the record point toward refusal, nonreceipt, pain-related inability to access medication while in isolation, and patient-reported compliance." (Doc. No. 115, at 7 ¶ 38.) In the end, Dr. Dameff is merely stating an opinion he could have expressed earlier, without the ICCR, in his original report.

Next, Dr. Dameff identifies in the Addendum "Section XI's January 23 ibuprofen reference as descriptive context and Section IX's 'approximately 2:05 AM' phrase as a use of the displayed header, subject to the timing distinction in row 12." (Doc. No. 116-1, at 14.) Section XI, titled "January 12-25, 2024: Dr. Bodjanac's Later Documentation Does Not Undo the Acute Failures[,]" includes the entry, "The record includes January MAR entries and refusal coding, including an RI ['Refused by Inmate] entry on January 23 for ibuprofen. (Doc. No. 100-2, at 9 ¶ 59.) Section IX, titled "December 27, 2023: Dr. Bodjanac's Documented Return-to-Housing Decision[,]" includes the time referenced by Dr. Dameff. (*Id.* at 6 ¶ 37.)

Here, too, Knox misses the mark. It is unclear how this additional information on ibuprofen administration has any meaningful effect on Dr. Dameff's conclusions expressed in his original report. The original report does not specifically discuss Knox's ibuprofen administration (*see* Doc. No. 115), despite Knox's originally produced medical records having mentioned his refusal of ibuprofen in January 2024 (Doc. No. 119-2, at 2). Dr. Dameff has not explained how any new information on ibuprofen in the ICCR requires revisions to his original opinions. In fact, Dr. Dameff elsewhere notes that he uses the January 23 administration of ibuprofen in the Addendum "as secondary descriptive information, not a material basis for a separate medical opinion." (Doc. No. 116-1, at 9.)

The remainder of Knox's additional briefing shows that much of the Addendum merely restates or vaguely bolsters opinions already expressed in Dr. Dameff's original report. Take a few examples from Dr. Dameff's "Court-Directed Comparison Chart." (Doc. No. 116-1, at 7–13.) In Row 1, Dr. Dameff identifies "January monitoring after the second hospitalization and rehabilitation stay" as ICCR information, identifies medical records where this information was already available, then states his "additional discussion" on this issue "explains [his] *existing*

opinion." (*Id.* at 7 (emphasis added).) In Row 3, Dr. Dameff identifies "[g]rouped discussion of Dr. Bodjanac's December 27, December 29, and January 12 encounters" as ICCR information, identifies the medical records where this information was already available, then states that he "*retain[s]* the specific December 27 criticism and contextual January analysis *already expressed*" and "*clarif[ies]*" the scope of the Section XII language in Part I.B. (*Id.* at 8 (emphasis added).) In Row 5, Dr. Dameff identifies several administrations of levetiracetam noted in the ICCR, indicates that the ICCR provided additional dose and time details, then states that the "administration details *refine* the chronology underlying [his] *existing* conditional opinion" and "*do not create a new* causation opinion." (*Id.* at 9 (emphasis added).) And in Row 8, Dr. Dameff identifies trauma findings and other issues as ICCR information, identifies the medical records where this information was already available, then and states that he had "*already expressed* those opinions using the earlier clinical information" and that "[c]onsolidation alone *is not* New Information." (*Id.* at 10 (emphasis added).) With these explanations, Knox has shown that portions of the Addendum merely duplicate, bolster, or vaguely "clarify" earlier opinions based on information Dr. Dameff already knew from medical records defendants already disclosed. That is not enough to show that this Addendum was a necessary revision to his original report.[4]

Knox attempts to invoke Rule 26(e), but it does not apply here. (Doc. No. 109, at 2–3.) Under Rule 26(e)(1), a party "who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process

[4] To the extent the report contains new opinions not based on the ICCR or rebuttal opinions, the parties seem to agree that those are impermissible. (Doc. No. 109, at 5; Doc. No. 111, at 6.)

or in writing[.]" Fed. R. Civ. P. 26(e)(2). As explained above, Knox did not disclose the Addendum "in a timely manner." He waited until the very last day of expert discovery while being in possession of the information for over a month and did not properly seek to provide that material according to the Court's order until after discovery had ended.[5]

The more fundamental problem, however, is that the Addendum is not a supplement within the meaning of Rule 26(e). This rule "is not a license to freely amend expert reports to bolster a party's position." *Bentley v. Highlands Hosp. Corp.*, No. 15-cv-97, 2016 WL 5867496, at *4 (E.D. Ky. Oct. 6, 2016) (citation omitted). Instead, Rule 26(e) "envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure was incorrect or incomplete and, therefore, misleading." *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (citation omitted). Here, Knox asserts that the Addendum does not change Dr. Dameff's methodology or ultimate conclusions, but rather "makes his consideration of [the ICCR and MAR] transparent." (Doc. No. 109, at 3.) Dr. Dameff's commentary uses terms like "clarify" and "explain [an] existing opinion." (Doc. No. 116-1, at 7.) At no point does Knox assert that Dr. Dameff's original report was incorrect or incomplete in a misleading way. As a result, Knox has not shown that the Addendum qualifies as a supplement under Rule 26(e).

For those reasons, Knox's reliance on the Court's decision in *Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, No. 4:12-cv-1390, 2015 WL 1530648 (N.D. Ohio Apr. 6, 2015), is misplaced. (Doc. No. 109, at 3–4.) The defendant in that case had submitted the report to buttress an argument connected to the Court's recent ruling on summary judgment and a *Daubert*

[5] This definition of timeliness under Rule 26(e) fits best under the particular circumstances of this case, but approaches vary among courts. *See Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 217 n.7 (6th Cir. 2019) (describing different approaches, including considering reports timely if provided "before the close of discovery and within 30 days of discovering it" (citations omitted)).

hearing. *Id.* at *3. But in this case, Knox submits the Addendum based on a limited set of new information without showing why his expert needed to revise his report based on that information. *Allied* is also distinguishable on the disputed issue of timeliness. There, the Court found that the supplement was timely because the defendants disclosed before the pretrial disclosure deadline imposed by Rule 26(e). *Id.* But the outcome may well have been different if the Court, like here, had ordered a specific deadline before pretrial disclosures for the supplement and the defendants had missed it. *See* Fed. R. Civ. P. 26(e)(1) ("A party . . . must supplement or correct its disclosure or response: (A) in a timely manner . . . or (B) *as ordered by the court*. (emphasis added)).

## III. CONCLUSION

Accordingly, Knox's motion to file and rely on the Addendum is **DENIED**. The Court lifts its stay on the remaining case management deadlines and **GRANTS in part** defendants' motion to extend them (Doc. No. 103). Contemporaneous with this order, the Court will file a third amended case management plan and trial order reflecting the new dates.

**IT IS SO ORDERED**.

Dated: October 19, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**